**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY | : | No: 1:20-CV-2562 |
| 3024 Harney Street | : | |
| Omaha, Nebraska 68131 | : | Judge |
| | : | |
| | : | **COMPLAINT** |
| Plaintiff, | : | |
| | : | **(1) BREACH OF CONTRACT; AND,** |
| v. | : | **(2) DECLARATORY JUDGMENT** |
| | : | |
| DUNN-RITE PRODUCTS, INC. | : | **Jury Trial Demanded** |
| 2200 South J. Street | : | |
| Elwood, Indiana 46036 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND**

Plaintiff, National Fire & Marine Insurance Company, by counsel, files the following Complaint for Damages and Jury Trial Demand:

### INTRODUCTION

1. This is an insurance breach of contract and declaratory judgment case arising from environmental contamination at a site with an industrial history dating back to 1892.

2. The environmental site is located at 2200 S. J Street Elwood, Indiana ("Site").

3. Dunn-Rite Products, Inc. ("Dunn-Rite") purchased the Site in or around 1998 and began operations at the Site thereafter.

4. On March 16, 2020, the Indiana Department of Environmental Management ("IDEM") wrote to Dunn-Rite seeking participation in cleanup of the Site. A true and correct copy of the IDEM March 16, 2020 letter is attached hereto as Exhibit 1.

5. IDEM contends the Site is contaminated with trichloroethylene ("TCE").

1

6. Dunn-Rite contends that it did not contaminate the site with TCE.

7. Dunn-Rite also contends that prior owners and/or operators at the Site have reported past underground storage tank leaks to IDEM prior to Dunn-Rite's Site ownership or operation.

8. National Fire & Marine Insurance Company ("NFMIC") issued insurance contract 72LP 160428 issued by NFMIC to Dunn-Rite for the December 28, 2003 – December 28, 2004 period. A true and correct copy of that insurance contract is attached hereto as Exhibit 2.

9. There is no civil lawsuit which has been filed concerning the dispute between Dunn-Rite and IDEM, but Dunn-Rite has demanded that NFMIC defend and/or indemnify Dunn-Rite for environmental matters related to the Site.

10. Under insurance contract 72LP 160428, there is no coverage for a loss that occurred in whole or part prior to December 28, 2003.

11. IDEM documents demonstrate that Dunn-Rite is correct, and the Site was contaminated with TCE prior to Dunn-Rite's ownership or operation at the Site and the prior owners/operators reported a leaking underground storage tank to IDEM in 1992.

12. As a result of the pre-2003 contamination, NFMIC does not owe coverage because those facts trigger the prior or continuous loss exclusion within the insurance contract.

13. NFMIC also asserts that Dunn-Rite has breached the contract through late notice and seeks declaratory judgment on a number of exclusions, as identified below.

14. NFMIC has denied coverage to Dunn-Rite for matters arising at the Site.

## **VENUE AND JURISDICTION**

15. Under 28 U.S.C. §1332(a), based upon information and belief, the matter in controversy for this insurance contract dispute exceeds $75,000.00 exclusive of interest and costs based

upon NFMIC's past experience with defense and indemnity costs associated with the type of contamination alleged at the Site.

16. Upon information and belief, Dunn-Rite will seek in excess of $75,000.00 exclusive of interest and costs from NFMIC for defense of IDEM administrative and possible future civil remedies, as well as indemnity associated with Site investigation and Site remediation.

17. Under 28 U.S.C. §1332(a)(1), NFMIC is diverse from Dunn-Rite.

18. Specifically, NFMIC is a corporation organized under Nebraska law with a principal place of business in Nebraska.

19. Upon information and belief, Dunn-Rite is a corporation organized under Indiana law with a principal place of business in Indiana, making the parties diverse citizens.

20. This insurance contract case presents a live and justiciable controversy because NFMIC asserts that the terms, conditions, and exclusions of its policy do not provide coverage for defense or indemnity for IDEM concerning any environmental contamination at the Site.

21. This insurance contract case presents a live and justiciable controversy because Dunn-Rite asserts that the insurance contract provides coverage for environmental contamination at the Site, and NFMIC has denied coverage.

22. Under 28 U.S.C. §1391(b)(2), venue is proper in this Court because a substantial part of the events giving rise to this insurance coverage dispute occurred in Elwood, Indiana which is located on the border of Madison and Tipton counties.

23. Under 28 U.S.C. §94(b)(1), federal venue lies in the Southern District of Indiana in this Court's Indianapolis division based upon the Site being located in or impacting either of those counties.

24. Consistent with Article III of the United States Constitution, this Court has jurisdiction over breach of contract matters meeting the statutory requirements outlined above.

25. Consistent with 28 U.S.C. §2201, et seq., there is an actual controversy between NFMIC and Dunn-Rite to the extent that Dunn-Rite has demanded that NFMIC defend or indemnify it for matters arising from the Site.

## FACTS

26. On March 16, 2020, the Indiana Department of Environmental Management ("IDEM") wrote to Dunn-Rite seeking participation in cleanup of the site. A true and correct copy of the IDEM March 16, 2020 letter is attached hereto as Exhibit 1.

27. IDEM contends the Site is contaminated with trichloroethylene ("TCE") in groundwater, among other pollutants. See Id. at p. 2.

28. On June 26, 2020, Dunn-Rite responded to the March 16, 2020 IDEM letter. A true and correct copy of the Dunn-Rite June 26, 2020 letter is attached hereto as Exhibit 3.

29. Within the June 26, 2020 Dunn-Rite response, Dunn-Rite denies contributing to any Site contamination, asserting "No known leaks, spills, or releases into the environment of any hazardous substances, pollutants, or contaminants have occurred at or from the Site under Dunn-Rite's (or post-2017 owners) ownership/operation." See Id. at p.8, ¶14(a)-(g).

30. IDEM documents indicate that prior owners and/or operators named Services and Materials Company, Inc. ("Services") and/or its affiliate Flex-O-Lite, Inc. ("Flex-O-Lite") used TCE at the site and developed a venting system for TCE air emissions at the site in response to neighbor complaints.

31. Specifically, from 1976-1998, Services and/or Flex-O-Lite manufactured highway road cones at the Site.

32. In the 1980's neighboring property owners to the Site complained concerning air emissions by Services and/or Flex-O-Lite, resulting in an agreed consent order with IDEM to use a larger venting stack away from property lines. See Agreed Order, Cause A-980 dated July 20, 1988 (Exhibit 4).

33. Services and/or Flex-O-Lite engaged an industrial hygienist to address air emissions at the Site. See ATEC Exhaust Stack Emission Sampling Report 21-69042 (Exhibit 5).

34. This industrial hygiene report concerned sampling in 1986 to determine exhaust protocols for "Road Cone Oil" on a production line for orange traffic cones. Id. at 1.

35. According to the ATEC report, road cones were cured after being heated and injected into molds. Id. at 1.

36. According to this report, "This curing process drives off significant, visible quantities of oils from the PVC cone mixture." Id.

37. As a result, the plant developed a venting process to remove the emissions from the indoor air and emit them outside. Id.

38. The goal of this report was to identify the components of road cone oil and then develop a method to emit the contaminants through venting stacks on the property. Id.

39. In connection with that exercise, the report identifies specific levels of TCE in the road cone oil and in air emissions. Id. at Sections 1-4.

40. Among the components of "Road Cone Oil" is "Trichloroethene" or TCE. Id. at 3.

41. The report identifies specific percentages of TCE in the total road cone oil volume. Id. at Table I, p. 3 and Table IV, p. 6.

42. The report confirms that TCE was present in air emissions from the site during the curing process. For example, December 8, 1986 air sampling found TCE in emissions at detectable concentrations in air emissions. Id. at Table VII, p. 8.

43. The report concludes that the emission levels were below then-current EPA standards, allowing Services and/or Flex-O-Lite to add additional exhaust systems to emit TCE at the Site. Id. at 8.

44. As a result, it is clear that the prior owner/operator of the Site used TCE in its production process and released it into the atmosphere at the site as part of its venting processes.

45. Dunn-Rite has participated in assessment of the Site since at least early 2019, and likely earlier, without providing any notice to NFMIC until over a year later.

46. This late notice has prejudiced the ability of NFMIC to obtain documents associated with the Site and investigate the matters relating thereto.

## COUNT I
### Breach of Contract Late Notice

47. NFMIC repeats and re-alleges all matters stated in preceding paragraphs, incorporating those matters herein.

48. NFMIC insurance contract 72LP 160428 requires Dunn-Rite to notify NFMIC as soon as practicable if an occurrence may result in a claim. See Ex. 2, 72LP 160428 at IV.2.a.

49. Among the notice requirements are how, when, and where the occurrence took place, including the names and addresses of injured parties and witnesses as well as the nature of the injury or damage. See Id. at IV.2.a.(1)-(3).

50. Among other requirements, NFMIC insurance contract 72LP 160428 prohibits Dunn-Rite from making any payment, assuming any obligation, or incurring any expense without NFMIC consent.  <u>See</u> Id. at IV.2.d.

51. Dunn-Rite was involved with Site assessment and investigation for well over a year before providing notice to NFMIC, possibly longer.

52. Upon information and belief, Dunn-Rite incurred significant expenses prior to notice.

53. Upon information and belief, the late notice has prejudiced NFMIC in its ability to determine the nature of IDEM involvement and efforts to find prior owners/operators who may be responsible for Site contamination.

54. Upon information and belief, Dunn-Rite may have voluntarily assumed obligations to IDEM prior to notice.

55. To the extent that Dunn-Rite has provided late notice or assumed obligations, these actions are a breach of contract under the terms specified above.

56. To the extent that Dunn-Rite has prejudiced NFMIC by these actions in breach of contract, NFMIC may not owe coverage for costs or expenses, including those incurred prior to notice and those incurred after notice to the extent prejudice has occurred.

57. NFMIC has breached the insurance contract in a manner which gives rise to damage in excess of the jurisdictional minimum for this Court.

58. NFMIC asserts this breach of contract claim against Dunn-Rite.

## COUNT II
### Declaratory Judgment On Duty To Defend In Absence Of A Civil Suit

59. NFMIC repeats and re-alleges all matters stated in preceding paragraphs, incorporating those matters herein.

60. Dunn-Rite has demanded that NFMIC defend it concerning matters relating to the Site and IDEM inquiries.

61. NFMIC has denied the claim.

62. Under NFMIC insurance contract 72LP 160428, NFMIC does not owe a duty to defend until a civil suit is filed or Dunn-Rite enters an alternative dispute resolution proceeding with NFMIC consent.

63. Specifically, the NFMIC duty to defend is triggered by a "suit" as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

See NFMIC insurance contract 72LP 160428 Form CG 00 01 10 11, I.A.1.a. (Ex. 2).

64. The term "suit" is defined as a "civil proceeding" or alternative dispute resolution proceeding, without reference to any "administrative" proceedings:

> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

See Id. at V.18.

65. NFMIC is not aware of any civil proceeding which has been filed or any alternative dispute resolution proceeding between Dunn-Rite and IDEM.

66. Presently, the IDEM letter requesting Site participation may be a claim, but there is no "suit" as defined by the NFMIC policy.

67. Dunn-Rite has requested defense, which NFMIC has denied.

68. NFMIC seeks a declaratory judgment that there is no "suit" as defined by its insurance contract, so that there is no current duty to defend.

## COUNT III
## Declaratory Judgment On Damages Commencing Prior To Policy Period

69. NFMIC repeats and re-alleges all matters stated in preceding paragraphs, incorporating those matters herein.

70. NFMIC insurance contract 72LP 160428 excludes property damage which commenced in whole or part prior to the policy period.  See Id., Exclusion of Damages Commencing Prior to Policy Period Broad Form Exclusion M-5076 (12/2001) (Ex. 2).

71. Specifically, this portion of the NFMIC insurance contract provides, in relevant part:

EXCLUSION OF DAMAGES COMMENCING PRIOR TO POLICY PERIOD
BROAD FORM EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to any "property damage" or "bodily injury" caused by an "occurrence", if any such "property damage" or any such "bodily injury" "commences" in whole or in part prior to the first day of the policy period of this Policy.  This exclusion applies even if the "property damage" or "bodily injury" continues, is alleged to continue, or is deemed to continue during the policy period of this Policy.

All exposure to a certain condition or related conditions and all damages involving or arising out of the same product, category of products, completed operation, job site, act or event, regardless of the frequency or repetition of those conditions or damages or the number of claimants shall be considered a single "occurrence".
For the purposes of this Endorsement only, "commences" shall mean: (i) first occurs, is alleged to first occur or is deemed to first occur; or (ii) incepts, is alleged

9

> to incept or is deemed to incept; or (iii) first manifests, is alleged to have first manifested, or is deemed to have first manifested. "Commences" is the earliest point in time of (i), (ii) or (iii).
>
> This insurance does not apply to any "personal and advertising injury" caused by an offense, if that offense was first committed or alleged to have been committed prior to the first day of the policy period of this Policy. This exclusion applies even if the offense resulting or alleged to have resulted in "personal and advertising injury" continues, is alleged to continue, or is deemed to continue during the policy period of this policy.
>
> Repeated instances of the same or similar conduct or acts, regardless of the frequency or repetition thereof, shall be considered a single offense.
>
> \* \* \* \*

See Id., Form M-5076 (12/2001) (Ex. 2).

72. With regard to the Site, Dunn-Rite repeatedly has asserted that any environmental contamination at the Site occurred prior to its purchase of the property in 1998, stating:

> The nature of the impacts appear to be from historic commercial and/or industrial operations on and around the property prior to Dunn-Rite's purchase of the property in the late 1990's. Dunn-Rite disputes any assertion that it is responsible for the environmental impacts on or around the Site. Dunn-Rite is interested, with the help of its insurance carriers, in pursuing potential claims under Indiana's Environmental Legal Action statute against prior owners and operators on and around the Site.

See Letter from L. Jorczak to NFMIC dated Jan. 14, 2020 at p. 1-2 (Exhibit 6).

73. Indeed, Dunn-Rite's response to the IDEM letter provides:

> No known leaks, spills, or releases into the environmental of any hazardous substances, pollutants, or contaminants have occurred at or from the Site under Dunn-Rite's, Reno's, and Vegas's ownership/operation.

See Letter from L. Jorczak to C. Parker dated June 26, 2020 at p. 8 (Ex. 3).

74. As a factual matter, Dunn-Rite asserts that any Site contamination occurred prior to the policy period of NFMIC.

75. The March 16, 2020 IDEM letter also appears to confirm IDEM's own belief that prior owners contributed to site contamination, with IDEM stating:

10

> IDEM has located documents or has reason to believe that documents exist that demonstrate that the past owners and/or operators named above did use materials containing the hazardous substances found at the Site during the time of ownership and/or operation and that such owners and/or operators contributed to the contamination of the site.

See Letter from R. Groves to Vegas Realty, et al dated March 16, 2020 at p. 2 (Ex. 1).

76. Indeed, IDEM documents indicate that prior owners and/or operators named Services and Materials Company, Inc. ("Services") and/or its affiliate Flex-O-Lite, Inc. ("Flex-O-Lite") used TCE at the site and developed a venting system for TCE air emissions at the site in response to neighbor complaints.

77. Specifically, from 1976-1998, Services and/or Flex-O-Lite manufactured highway road cones at the Site.

78. In 1992, these two entities reported an underground storage tank leak to IDEM and excavated contaminated soil.

79. In addition, in the 1980's neighboring property owners to the Site complained concerning air emissions by Services and/or Flex-O-Lite, resulting in an agreed consent order with IDEM to use a larger venting stack away from property lines. See Agreed Order, Cause A-980 dated July 20, 1988 (Exhibit 4).

80. Services and/or Flex-O-Lite engaged an industrial hygienist to address air emissions at the Site. See ATEC Exhaust Stack Emission Sampling Report 21-69042 (Exhibit 5).

81. This industrial hygiene report concerned sampling in 1986 to determine exhaust protocols for "Road Cone Oil" on a production line for orange traffic cones. Id. at 1.

82. According to the ATEC report, road cones were cured after being heated and injected into molds. Id. at 1.

83. According to this report, "This curing process drives off significant, visible quantities of oils from the PVC cone mixture." Id.

84. As a result, the plant developed a venting process to remove the emissions from the indoor air and emit them outside. Id.

85. The goal of this report was to identify the components of road cone oil and then develop a method to emit the contaminants through venting stacks on the property. Id.

86. In connection with that exercise, the report identifies specific levels of TCE in the road cone oil and in air emissions. Id. at Sections 1-4.

87. Among the components of "Road Cone Oil" is "Trichloroethene" or TCE. Id. at 3.

88. The report identifies specific percentages of TCE in the total road cone oil volume. Id. at Table I, p. 3 and Table IV, p. 6.

89. The report confirms that TCE was present in air emissions from the site during the curing process. For example, December 8, 1986 air sampling found TCE in emissions at detectable concentrations in air emissions. Id. at Table VII, p. 8.

90. The report concludes that the emission levels were below then-current EPA standards, allowing Services and/or Flex-O-Lite to add additional exhaust systems to emit TCE at the Site. Id. at 8.

91. As a result, it is clear that the prior owner/operator of the Site used TCE in its production process and released it into the atmosphere at the site as part of its venting processes.

92. The prior owner and/or operator also reported leaking storage tanks to IDEM in 1992 and removed contaminated soil from the Site.

93. Under Exclusion of Damages Commencing Prior to Policy Period Broad Form Exclusion Form M-5076 (12/2001), any property damage at the Site commenced prior to the December 28, 2003 policy period of the NFMIC insurance contract.

94. Indeed, Dunn-Rite has represented to NFMIC and IDEM that it has tendered the claim to insurers who issued contracts to Dunn-Rite prior to December 28, 2003. See Jorczak Letter dated June 26, 2020 at p.1 (Ex. 3)

95. NFMIC seeks a declaration that it does not owe defense or indemnity for any matters arising at the Site because the environmental contamination at the Site commenced prior to the NFMIC policy period.

## COUNT III
### Declaratory Judgment On Remaining Issues

96. NFMIC repeats and re-alleges all matters stated in preceding paragraphs, incorporating those matters herein.

97. Based upon the facts alleged above, there are several other bases to declare that the NFMIC insurance contract does not cover defense or indemnity for matters arising at the Site.

98. Specifically, the following insurance contract terms may give rise to coverage defenses upon further discovery in this case:

    a. The NFMIC insurance contract extends coverage only to "those sums the insured becomes legally obligated to pay . . . ." See Form CG 00 01 10 01, I.A.1.a (Ex. 2).

    b. Under such a "those sums" insuring grant, NFMIC would owe only a pro rata share of any defense or indemnity Dunn-Rite may owe, assuming that coverage is found under the NFMIC contract, which would bear relation only to the time on risk for the total time of contamination at the Site.

13

c.     The NFMIC insurance contract excludes property damage to property that Dunn-Rite owns, rents, or occupies. See Form CG 00 01 10 01, I.A.2.j.(1) (Ex. 2).

d.     Likewise, the NFMIC insurance contract excludes property damage to that particular part of real property on which Dunn-Rite or its employees, volunteer workers, contractors, or subcontractors perform operations, if the property damage arises out of those operations. See Form M-3792b (12/2002) (Ex. 2).

e.     The Site is property owned or rented by Dunn-Rite or upon which operations were performed within the terms of these two exclusions, possibly eliminating coverage.

f.     The NFMIC insurance contract excludes property damage arising from a release of pollutants. See Form M4359b (4/2002) (Ex. 2).

g.     While the term "pollutants" has been found ambiguous by some courts, NFMIC reserves the right to take discovery upon whether Dunn-Rite had a specific understanding of the term when it purchased the NFMIC contract which may lead to exclusion of coverage.

h.     The NFMIC insurance contract is written with Other Insurance Endorsement Form M-4685a (6/2003), which provides that NFMIC acts excess to other insurance triggered by the IDEM claim and which provides that the NFMIC duty to defend is an umbrella obligation which is triggered as a gap filling function only when other insurers decline defense. See Id., Form M-4685a (6/2003) (Ex. 2).

i.     Upon information and belief, NFMIC may act as an excess carrier to other insurers whom Dunn-Rite has requested defense and who are defending.

j.     The NFMIC insurance contract is written with Election of Insurance Carrier For Defense Limited Duty To Defend Broad Form Limitation which provides that

>   NFMIC does not have the duty to defend if another insurer defends Dunn-Rite. <u>See Id.</u>, Form M-5077 (12/2001) (Ex. 2).

k. Upon information and belief, NFMIC owes only an umbrella obligation to defend if no other insurer defends Dunn-Rite, and other insurers are defending Dunn-Rite.

## **Prayer for Relief**

WHEREFORE, National Fire & Marine Insurance Company is entitled to judgment on breach of contract and a declaration of rights that it owes no defense or indemnity to Dunn-Rite, and to recover such damages, costs, fees, interest, or other relief as the Court may order or the law may require.

Respectfully submitted,

*s/ Adam S. Ira*
Adam S. Ira, No. 32017-49
FROST BROWN TODD, LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, Indiana 46244-0961
aira@fbtlaw.com

David W. Walulik (pro hac to follow)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
dwalulik@fbtlaw.com
*Attorneys for National Fire & Marine Insurance Company*

## **JURY TRIAL DEMAND**

Plaintiff, National Fire & Marine Insurance Company, by counsel, pursuant to Federal Rule of Civil Procedure 38, demands a trial by jury on all issues so triable.

Respectfully submitted,

*s/ Adam S. Ira*
Adam S. Ira, No. 32017-49
FROST BROWN TODD, LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, Indiana 46244-0961
aira@fbtlaw.com

David W. Walulik (pro hac to follow)
FROST BROWN TODD, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
dwalulik@fbtlaw.com
*Attorneys for National Fire & Marine Insurance Company*

0119239.0735359   4827-8869-4475v1